1
2
3
4          IN THE UNITED STATES DISTRICT COURT
5          FOR THE NORTHERN DISTRICT OF CALIFORNIA
6
7   SCOTT PINHOLSTER,              )   No. C 06-6263 SBA (PR)
                                   )
8              Plaintiff,          )   **ORDER GRANTING**
                                   )   **DEFENDANTS' MOTION FOR**
       v.                          )   **SUMMARY JUDGMENT**
9                                  )
    ARNOLD                         )
10  SCHWARZENEGGER, et al.,        )
                                   )
11             Defendants.         )
    _____       )   (Docket No. 25)
12
13                      **INTRODUCTION**
14         Plaintiff Scott Pinholster is a condemned state prisoner who is proceeding pro se in this
15  civil rights action brought under 42 U.S.C. § 1983, in which he alleges that staff at San Quentin
16  State Prison ("SQSP") were deliberately indifferently to his medical needs in violation of his
17  Eighth Amendment rights.  Defendants have filed a motion for summary judgment on the
18  grounds that there are no genuine issues of material fact and that they are entitled to judgment as
19  a matter of law.  Plaintiff has filed an opposition.  For the reasons set forth below, the Court
20  GRANTS Defendants' motion for summary judgment as to all claims.[1]
21                      **BACKGROUND**
22         This action arises from Defendants' medical treatment of Plaintiff from September 13,
23  2005 to November 21, 2005.  Plaintiff primarily holds Defendant David, a staff physician at
24  SQSP, responsible for the allegedly constitutionally inadequate medical care Plaintiff received.
25
26  _____
27      [1] Defendants assert that they are protected by the doctrine of qualified immunity.  MSJ at 14.
28  Because the Court concludes that Plaintiff has not shown evidence that precludes summary judgment,
    it is unnecessary for the Court to consider the merits of this asserted defense.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The following facts appear to be undisputed, unless specifically noted otherwise.  Plaintiff suffers from "chronic cervical neck pain."  (Defs.' Mot. for Summ. J. ("MSJ"), Decl. of Jay Russell, Ex. D (UCSF Medical Center Assessment).)  At SQSP, in March 2005, Plaintiff was prescribed Tylenol with codeine.  (MSJ at 5.)  In April 2005, Plaintiff was examined at the University of California San Francisco Medical Center.  After an examination, a UCSF physician, Dr. John Keltner, recommended that Plaintiff "continue to take his present medications as prescribed," of Neurontin, an oral medication for the treatment of seizures that can be used for pain treatment, and Elavil, an antidepressant that can ease pain from nerve injuries.  (MSJ, Russell Decl., Ex. D.)  Plaintiff asserts, and Defendants dispute, that Tylenol with codeine was also one of these "present medications."  (Pl.'s Opp. to Mot. for Summ. J. ("Pl.'s Opp."), Statement of Facts "SOF" at 3; MSJ, David Decl. ¶¶ 7.)  In addition to the already-prescribed medications, Dr. Keltner also recommended that Plaintiff be given prescriptions of baclofen and Celebrex, Lidoderm patches, and Topamax.  "All of these medications are to be started one at a time, as the patient tolerates."  (MSJ, Russell Decl., Ex. D.)

In May 2005, a San Quentin physician, discontinued Plaintiff's prescriptions for Neurontin, Elavil, and Tylenol with codeine prescriptions, believing that they were causing Plaintiff's lethargy and dizziness, of which Plaintiff had complained.  Plaintiff asked that these prescriptions be re-prescribed.  On June 2, 2005, another San Quentin physician, Dr. Mustafa, re-prescribed the Neurontin and Elavil.  On June 7, Plaintiff complained that Tylenol with codeine had not been represcribed.  On June 10, Dr. Mustafa represcribed the Tylenol with codeine, a prescription that ran until September 14, 2005.  On September 6, 2005, another San Quentin physician, Dr. Corzine, reissued the Tylenol prescription for weekly refills.  (MSJ at 5.)

On September 14, 2005, Plaintiff complained of pain and weakness in his left arm, and was seen by San Quentin physician Dr. Zalpuri, who requested a neurology evaluation of Plaintiff.  Defendants assert that Dr. Zalpuri prescribed non-formulary Neurontin and Tylenol with codeine for Tylenol, an assertion which, considering the allegations contained in the

2

1  complaint, Plaintiff apparently disputes.  Dr. Zalpuri also prescribed Norvasc, to treat Plaintiff's

2  high blood pressure, and Prilosec, to treat his gastro-intestinal problems.  It appears that the

3  prescriptions for Neurontin and Tylenol with codeine were not filled because prescriptions

4  lasting for longer than one week for non-formulary medications must be approved by the central

5  medical services of California's Department of Corrections, which has its office in Sacramento.

6  (Id. at 5.)          On September 27, 2005, Plaintiff was seen again by a San Quentin physician, and

7  was given a one-week prescription of Neurontin and, Plaintiff to the contrary, Tylenol with

8  codeine.  According to Defendants, Plaintiff continued to receive Neurontin and Tylenol with

9  codeine from September 27 to October 5.  Plaintiff was seen by a medical provider on October 7,

10  and was prescribed Zanaflex, a muscle relaxant, and Lyrica, a seizure medication that can be

11  used to treat pain caused by nerve damage.  On that same day, a medical technical assistant took

12  Plaintiff's blood pressure and pulse rate as part of Plaintiff's treatment.  Also, on October 7,

13  Plaintiff submitted a health service request form, asking that his left hand be x-rayed, and

14  complaining that the medical technical assistant refused his request to see a physician.  Plaintiff

15  mentioned nothing in his request form about Tylenol with codeine.  (MSJ at 5-6; Russell Decl.,

16  Ex. S.)

17          During another medical examination on October 27, Plaintiff refused Indocin, a

18  medication used to treat pain and inflammation, and, Defendants alone assert, Tylenol.  At this

19  same examination, Plaintiff's prescriptions for Prilosec and hydrochlorothiazide, a medication

20  used to treat high blood pressure, were discontinued because Plaintiff said that he did not take

21  them.  On November 22, Plaintiff's prescription for Tylenol with codeine was renewed by SQSP

22  physicians.  (MSJ at 7-8.)

23          On September 13, 2005, Plaintiff submitted an inmate grievance, alleging that the had not

24  been provided with chronic care pain medication.  This grievance was reviewed and denied at all

25  levels, including the director's level.  (Id. at 8.)

26          In his complaint, Plaintiff alleges that staff at SQSP were deliberately indifferent to his

27

28                                                                     3

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  serious medical needs when Defendant David halted the chronic care program for pain

2  management of three medications taken together (Neurontin, Tylenol with codeine, and Elavil)

3  on September 13, 2005 and did not restart it until November 21, 2005.  (Compl. at 6.)  More

4  specifically, Plaintiff claims that his medical care was "substandard" resulting Plaintiff's

5  experiencing "daily acute chronic pain."  (Id. at 8, 9.)  Plaintiff alleges that this constitutionally

6  inadequate provision of health care was caused by SQSP's medical staff failure to follow the

7  recommendations from the "more medically qualified" doctors at UCSF, who recommended that

8  Plaintiff continue to take his "present medications," which included Tylenol with codeine.[2]  (Id.

9  at 11.)

10       Turning from undisputed facts and allegations to evidence, the Court notes that

11  Defendants have submitted evidence in the form of a declaration with exhibits demonstrating that

12  on October 20, during a medical examination, Plaintiff told Defendant David that he was unable

13  to take Celebrex, and that the baclofen, and Topamax were not effective.  Defendants have also

14  submitted evidence that Plaintiff "contended that the only thing which helped his pain was

15  codeine, Elavil and Neurontin taken together."  However, according to this same evidence,

16  Defendant David, after an examination of Plaintiff and his medical history, thought that "a

17  prescription of Tylenol with codeine was medically contraindicated," and therefore did not

18  prescribe it.  Defendants have submitted evidence that Defendant David ordered an increase in

19  Plaintiff's Elavil prescription, discontinued the Lyrica prescription (because it was currently

20  unavailable), reinstated the Neurontin prescription to treat Plaintiff's pain, and ordered that

21  Plaintiff return to the clinic in two to four weeks for further evaluation, including an evaluation

22  of the medications' effectiveness.  (MSJ, Decl. of C. Davis ¶¶ 16-17.)  Medical records submitted

23  with Defendants' declarations indicate that Defendant Davis indeed wrote prescriptions for these

24

25    [2] Plaintiff also claims that Defendants' actions violated the terms of Plata v. Schwarzenegger,
26  01-1351 TEH, in which the Court determined that the California prisons' medical delivery system is in
    a state of crisis and required correction.  It is unnecessary for the Court to consider the merit of this
27  claim because Plaintiff  has not shown that his medical care was constitutionally inadequate based on
    the record before the Court.

28                                                          4

United States District Court
For the Northern District of California

1   medications on October 21, 2005, which were to last until November 20.  (Id., Russell Decl., Ex.

2   U.)

3       Plaintiff has submitted evidence in the form of a declaration, in which he avers that

4   during his examination with Defendant David, he asked for and was denied the additional

5   medications recommended by UCSF.  Plaintiff further avers that he was told that the codeine,

6   which was part of Plaintiff's preferred trio of medications, would not be ordered, and that it was

7   unnecessary for Plaintiff's treatment.  (Pl.'s Opp. to MSJ, Decl. of Scott Pinholster (Docket No.

8   36) at 1-2.)

9                               **DISCUSSION**

10  **I.      Standards of Review**

11          **A.      Summary Judgment**

12       Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

13  that there is "no genuine issue as to any material fact and that the moving party is entitled to

14  judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect

15  the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute

16  as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

17  verdict for the nonmoving party.  Id.

18       The party moving for summary judgment bears the initial burden of identifying those

19  portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

20  issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Where the moving

21  party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

22  reasonable trier of fact could find other than for the moving party.  But on an issue for which the

23  opposing party will have the burden of proof at trial, as is the case here, the moving party need

24  only point out "that there is an absence of evidence to support the nonmoving party's case."  Id. at

25  325.

26       Once the moving party meets its initial burden, the nonmoving party must go beyond the

27  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

28

                                      5

United States District Court
For the Northern District of California

1    genuine issue for trial." Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over

2    material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

3    Anderson, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a

4    genuine issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).  The

5    nonmoving party has the burden of identifying, with reasonable particularity, the evidence that

6    precludes summary judgment.  Id.  If the nonmoving party fails to make this showing, "the

7    moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

8    **II.    Analysis**

9        Plaintiff alleges that staff at SQSP were deliberately indifferent to his serious medical

10   needs when Defendant David halted the chronic care program for pain management of three

11   medications taken together (Neurontin, Tylenol with codeine, and Elavil) on September 13, 2005

12   and did not restart it until November 21, 2005.  (Compl. at 6.)  More specifically, Plaintiff claims

13   that his medical care was "substandard" resulting in Plaintiff's experiencing "daily acute chronic

14   pain."  (Id. at 8, 9.)  Plaintiff alleges that this constitutionally inadequate provision of health care

15   was caused by SQSP's medical staff failure to follow the recommendations from the "more

16   medically qualified" doctors at UCSF, who recommended that Plaintiff continue to take his

17   "present medications," which included Tylenol with codeine.  (Id. at 11.)

18       Deliberate indifference to a prisoner's serious medical needs violates the Eighth

19   Amendment's proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429

20   U.S. 97, 104 (1976).  A determination of "deliberate indifference" involves an examination of

21   two elements:  the seriousness of the prisoner's medical need and the nature of the defendant's

22   response to that need.  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on

23   other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en

24   banc)).

25       A prison official is deliberately indifferent if he knows that a prisoner faces a substantial

26   risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.

27   Farmer v. Brennan, 511 U. S. 825, 837 (1994) (equating standard with that of criminal

28

6

United States District Court
For the Northern District of California

1   recklessness).  The prison official must not only "be aware of facts from which the inference

2   could be drawn that a substantial risk of serious harm exists," but "must also draw the inference."

3   Id.  Consequently, in order for deliberate indifference to be established, there must exist both a

4   purposeful act or failure to act on the part of the defendant and harm resulting therefrom.  See

5   McGuckin, 974 F.2d at 1060.  In order to prevail on a claim of deliberate indifference to medical

6   needs, Plaintiff must establish that the course of treatment the doctors chose was "medically

7   unacceptable under the circumstances" and that they chose this course in "conscious disregard of

8   an excessive risk to plaintiff's health."  See Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir.

9   2004).  A claim of mere negligence related to medical problems, or a difference of opinion

10   between a prisoner patient and a medical doctor, is not enough to make out a violation of the

11   Eighth Amendment.  Id.; Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

12          Reading the facts in a light most favorable to Plaintiff, the Court concludes that Plaintiff

13   has not shown evidence that precludes summary judgment.  More specifically, Plaintiff has

14   provided evidence, through his declaration, that he was denied codeine, not that he was deprived

15   of other medications prescribed by San Quentin physicians.  Defendants have presented evidence

16   that Plaintiff received medical treatment for his condition during the time at issue in his

17   complaint.  Plaintiff may not have received the medical care he desired but he did receive

18   medical care, which, under the facts presented, was not constitutionally inadequate.  Indeed, the

19   record presents undisputed facts that Plaintiff was frequently examined over the time at issue in

20   the complaint and given many treatments for his nerve pain.  Though, as Plaintiff asserts, Tylenol

21   with codeine should have been part of that treatment for the period at issue in the complaint, a

22   difference of medical opinion is not sufficient by itself to make out a violation of the Eighth

23   Amendment.  Furthermore, the instant action is unlike the facts presented in Hamilton v. Endell,

24   in which the Ninth Circuit found a violation of the Eighth Amendment in prison's reliance upon

25   the medical opinion of doctor who had not examined plaintiff, as opposed to the medical opinion

26   of plaintiff's regular physician.  See 981 F.2d 1062, 1066-67 (9th Cir. 1992).  In the instant

27   action, Plaintiff's treatment was determined after an examination of Plaintiff, and a study of his

28

7

1    medical history.

2

3         Furthermore, Plaintiff has not shown that the treatment chosen by the SQSP medical staff

4    was "medically unacceptable under the circumstances" and that they chose this course in

5    "conscious disregard of an excessive risk to plaintiff's health," a fact, Plaintiff asserts, is evident

6    in SQSP's deviation from the UCSF medical assessment plan.  Though Plaintiff may regard the

7    medical opinions of UCSF physicians as superior to those of SQSP, he has not shown that the

8    treatment chosen by SQSP was medically unacceptable, or that it was anything other than a

9    difference of medical opinion, which under the authorities cited above, is not sufficient to show

10   an Eighth Amendment violation.  On the other hand, Defendants have presented evidence that

11   SQSP physicians prescribed many medications appropriate for treating pain, medications that

12   were prescribed after examinations of Plaintiff and a study of his medical history.  Plaintiff has

13   not presented sufficient countering evidence.  Based on this record, the Court finds that Plaintiff

14   has not presented evidence that precludes summary judgment.  Accordingly, the Court will grant

15   Defendants' motion for summary judgment as to all claims.

16                                    **CONCLUSION**

17        For the foregoing reasons, Defendants' motion for summary judgment is GRANTED as to

18   all claims.  Plaintiff shall take nothing by way of his complaint.  This order terminates Docket

19   No. 25.  The Clerk shall enter judgment, terminate all pending motions, and close the file.

20        **IT IS SO ORDERED**.

21   DATED:  March 23, 2009

22                                    _Saundra B Armstrong_
                                     _____
23                                   SAUNDRA BROWN ARMSTRONG
                                     United States District Judge
24

25

26

27

28
     G:\PRO-SE\SBA\CR.06\Pinholster263.msj.md      8

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

PINHOLSTER et al,

        Plaintiff,

  v.

SCHWARZENEGGER et al,

        Defendant.
_____/

Case Number: CV06-06263 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 23, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Scott  Pinholster C-87601
San Quentin State Prison
San Quentin,  CA 94974

Dated: March 23, 2009

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

G:\PRO-SE\SBA\CR.06\Pinholster263.msj.md     9